FILED

United States District Court
Middle District of Florida
Orlando Division

2022 JUL 14 AM 9:17

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

ELIZABETH PARKER,
         Plaintiff,

v.

Case No. 6:22-cv-1232-WWB-EJK

TELEDYNE INSTRUMENTS, INC. d/b/a TELEDYNE ODI,
         Defendant.

## Complaint and Demand for Jury Trial

### I

### Subject Matter Jurisdiction

1. The United States District Court for the Middle District of Florida has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1367 as it raises a question of Federal Law and the issues of State Law arise from a common basis of operative fact.

2. Venue is proper in thuis District and Division, because the claims asserted herein arose in Volusia County, Florida.

### II

### Claims

3. Elizabeth Parker began employment with Defendant on August 12, 2013.

1

4. Parker was terminated from her employment by defendant on July 14, 2020; but after discussion with Defendant, Parker's termination was delayed until on or about August 26, 2020, when Parker's accumulated leave had been dissipated.

5. At the time Parker's employment was terminated, her job position was Project Manager (Level III).

6. At all times during her employment by Defendant, Parker performed her job consistent with defendant's reasonable expectations as an employer.

7. On July 17, 2018, Parker visited the Emergency Room, suffering from chest pain and nausea.

8. On July 25, 2018, Parker requested and received accommodations from Teledyne (Teledyne Instruments, Inc. d/b/a Teledyne ODI) (Perrault, HR and Castillo, Manager), to allow her to continue working full-time on-site or remotely, facilitating Parker's ability to attend a number of doctors' appointments near Parker's home.

9. On August 3, 2018, Teledyne (Perrault, HR) recommended Parker take sick leave from August 6 – August 9, 2018; Parker took sick leave as suggested.

10. On August 9, 2018, Parker provided Teledyne (Perrault, HR and Castillo, Manager) an update of her medical condition and enumerated the dates/times of her upcoming medical appointments through September 5, 2018; Parker requested to work remotely on August 10, 2018 to facilitate attendance at one of the medical appointments.

11. On or about the 2nd week in September, 2018, Parker had returned to working on-site at Teledyne.

12. Parker's medical condition continued, with Parker regularly updating her managers in-person (Barrett, then Pullin) regarding Parker's health challenges and requesting time off as-needed for appointments through October 24, 2019.

13. On October 24, 2019, Parker requested Disability Accommodations from Teledyne; these were granted October 25, 2019, as follows:

> - "Work remote 3 days/week starting at 9am or a comparable time of your choosing
> - Work on-site 2 days/week starting at 10am or a comparable time of your choosing
> - The 2 days can be determined by Liz and may adjust weekly as needed around medical appointments, with proper notice to manager
> - If a compelling situation arises and Liz needs to work remote for the full week, it may be considered, but should be by exception only
> - Liz must be on-site during customer visits to the facility"

14. The Accommodations were approved through 12/31/2019 (9 weeks), with a required status update (to include progress toward medical improvement) by Liz to her manager (Pullin) on 12/02/2019.

15. Parker informally provided her manager (Pullin) periodic status updates regarding her symptoms, diagnosis', and prognosis while working on-site.

16. During Parker's periodic status updates, her manager (Pullin) express to Parker that Parker's co-workers on the Projects team objected to Parker's Accommodations and that this was causing discontent within the team; Parker's manager explained that because of this discord, Parker's Accommodations could not go on indefinitely.

17. During Parker's periodic status updates with her manager (Pullin), Parker's manager repeatedly suggested Parker could apply for a lesser role (with lesser pay) or go out on Disability, rather than work full-time while seeking resolution for Parker's health challenges.

18. On or about January 28, 2020, Parker spoke with HR (Perrault) about her disability status and struggles in obtaining a unifying diagnosis; at that time, Perrault echoed Pullin's suggestion that Parker should consider taking on a lesser role for lesser pay or go out on Disability.

19. On January 29, 2020, Parker's Accommodations were extended by Teledyne (Perrault, HR) through April 30, 2020.

20. On April 30, 2020, Parker still required the approved Disability Accommodations; at this time, the salaried Teledyne employees were all encouraged to work from home.

21. On June 24, 2020, Parker requested an FMLA leave from HR (Perrault), stating, "I have just returned from my most recent round at Mayo Clinic. As a result of the latest tests, they are developing a plan of care for me that is quite extensive.

There is a three-week segment that entails daily attendance at Mayo Jacksonville, from 8 – 4:30 Monday – Friday. Additionally, there will be a follow-on window where they want to introduce a number of treatments and therapies one-at-a-time, to see how they work to address my symptoms; these each bring the risk of making me unable to perform my usual job duties due to side effects and/or the need to attend related appointments.

I am awaiting the package from the neurologist, which will be more specific with actual dates for the three week program, and will not be able to begin the other interventions (with the possible exception of the Physical Therapy), until after I have completed the program;" Perrault replied, in part, "I'm so glad that you have some options at this point, I know it has been a tough road so far," and further communicating that she would request an HR employee forward the FMLA paperwork to Parker.

4

22. On June 25, 2020, HR (Jolley) provided Parker FMLA forms to be completed by Parker's treating physician (Certification of Healthcare Provider) and returned to Teledyne; Jolley further indicated she had initiated the FMLA forms and that, once Parker had the dates, she would "complete the rest of the FMLA documents and email them to you [Parker] to sign and send back."

23. On July 14, 2020, Parker was informed she was, immediately, being laid-off (HR, McGuire and VP Operations, Program Management & Aftermarket Services, Kordek).

24. Parker asked why Teledyne would dismiss her when she had just requested FMLA and submitted the forms to her treating physician for completion and return to Teledyne in June.

25. McGuire responded he had no knowledge of Parker's request for FMLA.

26. Parker requested not to be laid-off.

27. McGuire insisted Parker sign the Notice, surrender all Company property, pack-up her belongings and leave the premises; but agreed to consider Parker's concerns after-the-fact; Parker complied, departing Teledyne mid-afternoon July 14, 2020.

28. Parker received notification from the Mayo Clinic Patient Portal that the completed FMLA forms from Mayo Clinic Neurology were available for download as she was driving home.

29. Parker arrived home after 4 PM on July 14, 2020 and immediately downloaded the completed Physician's FMLA package (signed by the Dr. Gregory Day on July 10, 2020) and faxed and e-mailed this to Teledyne HR (Perrault and McGuire).

30. Dr. Day indicated Parker's condition commenced approximately June of 2019, is of unknown duration, that Parker's ability to perform some job functions is affected, and that Parker will need follow-up treatment appointments or to work part-time or on a reduced schedule because of her

medical condition. Dr. Day also indicated Parker had been referred to a 3 week intensive rehabilitation program.

31. McGuire acknowledged receipt of the Physician's FMLA package at 4:48 PM, and promised to evaluate Parker's situation and reply soon.

32. On July 15, 2022, McGuire replied to Parker, stating, in part, the following:

- ➢ "We had no knowledge of your medical situation"
- ➢ "Your job is no longer available and your submission of FMLA paperwork was not timely and occurred after you were informed of your termination"
- ➢ "We are sympathetic to your situation, and in view of your long service with the Company, we will delay your termination date and allow you to utilize accrued short-term and long-term sick time and accrued vacation in order to complete the course of treatment recommended by your health care provider. During that time you may apply for any benefits for which you are eligible."
- ➢ "Your employment will officially terminate when you have depleted your accrued time-off benefits."

33. Parker had been employed by the Defendant for more than 12 months as of July 14, 2020.

34. Parker had worked more than 1,250 hours for Defendant in the 12 months preceding July 14, 2020.

35. Defendant employs greater than 50 employees at Teledyne ODI Daytona Beach, FL.

36. By notice of determination, the Florida Department of Economic Opportunity sustained Parker's claim for unemployment compensation benefits. Defendant did not appeal the notice of determination.

37. Defendant has acted with oppression and malice toward Parker and with gross and/or reckless disregard for her rights.

38. Defendant is engaged in, among other things, the engineering, manufacturing, sales and service of subsea electrical and fiber optic interconnect systems for the harshest operating environments. This requires the Defendant to ship and receive in interstate commerce goods and supplies used and consumed in the course of its business and to ship in interstate commerce the goods its business produces.

39. Despite being laid-off on July 14, 2020, Parker was an employee of Teledyne until August 26, 2020.

## III

## Causes of Action

### Count 1 – Interference with Exercise of Rights Under Family Medical Leave Act

40. Plaintiff incorporates herein paragraphs 1 through 39 as if fully set-forth herein.

41. Because Parker had worked for Defendant for greater than 12 months preceding July 14, 2020, because she had worked for Defendant for greater than 1,250 hours in the 12 months preceding July 14, 2020, and because Defendant employed more than 50 persons at the worksite where it employed Parker, Parker was, as of July 14, 2020, an "eligible employee" within the meaning of 29 U.S.C. § 2612(a)(1).

42. Defendant is engaged in a commerce affecting interstate commerce and is an "employer" within the meaning of 29 U.S.C. § 2611(4).

43. Parker's providing to Defendant of written notice requesting FMLA on June 24, 2020, and Defendant's response on June 25, 2020, acknowledging Parker's on-going struggle with her health and requesting Parker have her physician complete the Certification of Healthcare Provider forms, was sufficient to reasonably apprise Defendant of Parker's request to take time off for a serious health condition; FMLA protects an employee from interference with the invocation of their FMLA rights. Thus, terminating plaintiff after she requested FMLA leave may constitute interference with Parker's rights under the FMLA. *Plunkett v. Matthews International Corporation*, No. 2:16CV1512, 2020 WL 4431561 (W.D. Pa. July 31, 2020)

44. Teledyne was fully aware of Parker's symptoms, diagnosis' and on-going schedule of appointments with neurology, cardiology, pulmonary and other physician specialists – Parker always advised in advance dates/times for appointments and disclosing how she would either work or use accrued leave to cover these appointments, and from October 25, 2019-forward provided nominal Disability Accommodations to Parker, which were free to Teledyne and allowed Parker to fulfill her role as a Project Manager. Teledyne was cognizant of Parker's on-going care by her team of physicians who provided "continuing treatment" for her "serious health condition" under 29 U.S.C. § 2612(a)(1)(D) and 29 C.F.R. 825.113. Parker was expected to be incapacitated from working for a period of more than three calendar days, per her FMLA advance-request to HR and her physician's Certification of Healthcare Provider statement, and was following a regimen of continuing treatment.

45. Parker was entitled to leave under the Family Medical Leave Act for treatment for a "serious health condition" within the meaning of 29 U.S.C. § 2612(a)(1)(D) and 29 C.F.R. 825.113.

8

46. Defendant unlawfully interfered with Parker's right to take FMLA leave by terminating Parker's employment while declaring no knowledge of Parker's protected conduct (FMLA request for protected leave).

## Count 2 – Retaliation for Exercise of Rights Granted by the Family Medical Leave Act

47. Plaintiff incorporates herein paragraphs 1 through 39 as if fully set-forth herein.

48. Because Parker had worked for Defendant for greater than 12 months preceding July 14, 2020, because she had worked for Defendant for greater than 1,250 hours in the 12 months preceding July 14, 2020, and because Defendant employed more than 50 persons at the worksite where it employed Parker, Parker was, as of July 14, 2020, an "eligible employee" within the meaning of 29 U.S.C. § 2612(a)(1).

49. Defendant is engaged in a commerce affecting interstate commerce and is an "employer" within the meaning of 29 U.S.C. § 2611(4).

50. Parker's providing to Defendant of written notice requesting FMLA on June 24, 2020, and Defendant's response on June 25, 2020, acknowledging Parker's on-going struggle with her health and requesting Parker have her physician complete the Certification of Healthcare Provider forms, was sufficient to reasonably apprise Defendant of Parker's request to take time off for a serious health condition; FMLA protects an employee from interference with the invocation of their FMLA rights. Thus, terminating plaintiff after she requested FMLA leave may constitute interference with Parker's rights under the FMLA. *Plunkett v. Matthews International Corporation*, No. 2:16CV1512, 2020 WL 4431561 (W.D. Pa. July 31, 2020)

51. Teledyne was fully aware of Parker's symptoms, diagnosis' and on-going schedule of appointments with neurology, cardiology, pulmonary and other physician specialists – Parker always advised in advance dates/times for appointments and disclosing how she would either work or use accrued leave to cover these appointments, and from October 25, 2019-forward provided nominal Disability Accommodations to Parker, which were free to Teledyne and allowed Parker to fulfill her role as a Project Manager. Teledyne was cognizant of Parker's on-going care by her team of physicians who provided "continuing treatment" for her "serious health condition" under 29 U.S.C. § 2612(a)(1)(D) and 29 C.F.R. 825.113. Parker was expected to be incapacitated from working for a period of more than three calendar days, per her FMLA advance-request to HR and her physician's Certification of Healthcare Provider statement, and was following a regimen of continuing treatment.

52. Parker was entitled to leave under the Family Medical Leave Act for treatment for a "serious health condition" within the meaning of 29 U.S.C. § 2612(a)(1)(D) and 29 C.F.R. 825.113.

53. FMLA prohibits employers from considering an employee's use or attempted use of FMLA leave as a negative factor in employment decisions. *Bryant v. Dollar General*, 538 F.3d 394, 402 (6 Cir. 2009).

54. The FMLA prohibits defendant, as a covered employer, from considering Parker's use or attempted use of FMLA leave as a negative factor in employment decisions. *Id.*

55. Parker provided defendant with sufficient notice on June 24, 2020, of her need to take FMLA leave on account of a serious health condition that she was experiencing.

56. Defendant failed to act upon/file proper documentation of Parker's notice of FMLA, submitted June 24, 2020, within Defendant's own HR process.

56. Defendant has used Parker's use and attempted use of FMLA leave as a negative factor in its decision to terminate Parker's employment.

57. Defendant has violated the FMLA by terminating Parker's employment in retaliation for her use of FMLA leave and discriminating against her for using and attempting to use FMLA leave on account of a serious health condition.

58. As a direct and proximate result of defendant's violation of the FMLA, Parker has suffered injury for which she is entitled to remedy under the FMLA.

## IV

## Demand for Relief

WHEREFORE, plaintiff Elizabeth Parker demands as follows against Defendant:

(1) Entry of a judgment awarding her her lost pay and benefits, past and future, in such amount as proved by the evidence at trial and found by the jury;

(2) Entry of a judgment awarding her compensatory damages fairly and fully compensating her for the emotional distress and mental anguish that Defendant has caused her;

(3) Entry of a judgment assessing punitive damages against defendant to punish it for its wrongful conduct and to deter repetition of same;

(4) Entry of a judgment awarding him costs, expenses, and attorney's fees incurred herein pursuant to the FMLA and Fed.R.Civ.Pro. 54;

(5) Entry of an order reinstating her to employment or, in lieu thereof, an award of front pay; and,

(6) the grant of all other and further relief to which he is shown entitled.

## Demand for Trial by Jury

Plaintiff demands pursuant to the Federal Rule of Civil Procedure 38 trial by jury on all issues herein so triable.

                                                      Respectfully submitted,

                                                      BY: /s/ Elizabeth Parker
                                                      ELIZABETH PARKER
                                                      3446 Trevino Circle
                                                      Titusville, FL 32780
                                                      Telephone: (321) 961-1965
                                                      Facsimile: (855) 716-8998
                                                      E-mail: Liz@JustfortheCause.com
                                                      PRO-SE